# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NEIL SNOWDEN, )
)
      **Appellant,** )
)
vs. )
) Case No. 06 C 2753
LITTON LOAN SERVICING INC., )
)
      **Appellee.** )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On October 14, 2005, Neil Snowden filed a Chapter 13 bankruptcy petition, hoping to forestall the loss of his home, which a few days earlier had been sold at a foreclosure sale resulting from a mortgage foreclosure suit instituted in state court by Litton Loan Servicing, Inc. On November 28, 2005, the bankruptcy court granted Litton's motion to lift the automatic stay of proceedings imposed by 11 U.S.C. § 362(a). On March 9, 2006, Snowden moved to vacate the bankruptcy court's order, alleging that Litton had procured the order via misrepresentation. The bankruptcy court denied Snowden's motion, and Snowden appealed.

For the reasons discussed below, the Court reverses the bankruptcy court's decision and remands for further proceedings.

### Facts

Snowden was the defendant in a mortgage foreclosure suit brought by Litton in state court. After obtaining a judgment of foreclosure on September 9, 2005, Litton purchased the foreclosed property at a judicial sale for an amount less than the balance due on Snowden's

mortgage note. A state court confirmed the sale on October 5, 2005 pursuant to the Illinois Mortgage Foreclosure Law. *See* 735 ILCS 5/15-1508.

On October 15, 2005, Snowden filed a voluntary Chapter 13 petition in which he listed the full amount of his arrearage with Litton as one of his debts. R. 1. On November 8, 2005, Litton moved to lift the automatic stay imposed by reason of Snowden's bankruptcy filing. In its motion, Litton asserted, incorrectly, that "[a] third party was the sole successful bidder" at the foreclosure sale of Snowden's property. R. 3. Litton argued that the property was not part of Snowden's bankruptcy estate and that the court should lift the automatic stay, because otherwise Litton would not be "adequately protected." *Id.* The bankruptcy court granted Litton's motion on November 23, 2005. R. 4.

Snowden subsequently learned of the error in Litton's representation to the bankruptcy court and, on March 9, 2006, filed a motion to vacate the court's order lifting the automatic stay. R. 5. Snowden's motion cited Federal Rule of Civil Procedure 60(b), which is incorporated in Bankruptcy Rule 9024. Snowden argued that Litton's representation to the bankruptcy court regarding who purchased the property was incorrect and that his counsel had learned from a representative of Litton that Litton had purchased the property for less than the balance due on Snowden's loan. *Id.* Snowden argued that for these reasons, at the time of his bankruptcy filing he held a "special right to redeem" under 735 ILCS 5/15-1604(a) that allowed him to cure the default on the mortgage note. Snowden characterized his redemption right as "an interest in the real estate that was protected as part of the bankruptcy estate." *Id.* In response, Litton did not take issue with Snowden's right to raise the issue under Rule 60(b). It argued only that Snowden retained no interest in the real estate but rather had only the redemption right, which he had

forfeited by failing to exercise it in timely fashion. R. 9.

The bankruptcy court heard oral argument on Snowden's motion to vacate. The court thereafter issued a written decision denying Snowden's motion. R. 10. The court concluded that the only right Snowden retained at the time of his bankruptcy filing was a redemption right, and that because he did not exercise that right within the time limits imposed by 11 U.S.C. §108(b), the right had expired long before Snowden had filed his motion to vacate the order lifting the automatic stay. *Id.* at 8-10. It rejected Snowden's argument that he was entitled to cure the default on the note over the course of the bankruptcy proceeding. *Id.* at 9. The court also concluded that in any event, Snowden's Rule 60(b) motion, which the court characterized as based on Rule 60(b)(2), was lacking in merit. Specifically, it ruled that the evidence Snowden had presented in his motion was not "newly discovered evidence" within the meaning of Rule 60(b)(2) because Snowden could have discovered it before the order lifting the stay was entered. *Id.* at 10-11.

## Discussion

"A motion to vacate a judgment pursuant to Rule 60(b) is addressed to the sound discretion of [the lower] court and a denial of a 60(b) motion will not be overturned on appeal in the absence of an abuse of discretion." *McKnight v. United States Steel Corp.*, 726 F.2d 333, 335 (7th Cir. 1984). A court "necessarily abuses its discretion when it bases its decision on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990).

Although the bankruptcy court addressed it last, the question whether Snowden's motion met the threshold requirements of Federal Rule of Civil Procedure 60(b) is, logically, the first issue to be considered. Rule 60(b) states:

3

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;. . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b).

The bankruptcy court read the motion as relying on Rule 60(b)(2), the "newly discovered evidence" provision. It rejected the motion on the ground that if Snowden had used due diligence, by the time of the motion to lift the stay he could have discovered the supposedly new evidence, namely the fact that Litton, not a third party, had purchased the property at the foreclosure sale. Snowden's motion, however, did not cite Rule 60(b)(2), nor did it use the phrase "newly discovered evidence" (or any similar phrase) that might have indicated that it was limited to Rule 60(b)(2). Rather, the motion simply cited Rule 60(b) without reference to any particular subsection of that Rule. R. 5 (motion), 7 (memorandum), 8 (amended memorandum).

In response to Snowden's motion, Litton did not argue that the motion failed to comply with the requirements of Rule 60(b), nor, more specifically, did it argue that Snowden had failed to exercise due diligence. Rather, Litton argued only that any right of redemption that Snowden might have retained had expired and could no longer be exercised. R. 9.

It was the bankruptcy court itself (at oral argument) that first characterized Snowden's motion as relying on a theory of "new evidence." Tr. Mar. 29, 2006 at 3. But when the court asked Snowden's counsel for authority supporting the proposition that the order lifting the stay

4

could be revisited, it appears to have cut counsel off before he could explain the matter fully. *See id.* at 3 (COUNSEL: Well, your Honor, under Rule 60 -- THE COURT: Yes? COUNSEL: -- I believe there was a -- THE COURT: There is nothing under Rule 60 that allows you to come back and present new facts which should have been knowable before the order was entered. COUNSEL: Yes, Your Honor. Except that the order was entered on Litton Loan's allegation that the property was actually sold to a third party.").

The bankruptcy court abused its discretion in reading Snowden's motion as relying solely on Rule 60(b)(2). The proper reading of the motion was that it was based on Rule 60(b)(3), which permits relief from a final order based on "fraud …, misrepresentation, or other misconduct of an adverse party"; Snowden alleged that Litton was fully aware that it had purchased the property at the sale but had told the bankruptcy court exactly the opposite. Rule 60(b)(3) "applies to both intentional and unintentional misrepresentation." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The rule "provides an escape valve to protect the fairness and integrity of litigation in federal courts." *Id.* at 898. Assuming, for purposes of discussion, that Rule 60(b)(3) also requires a showing of due diligence – a point the Court need not decide definitively – Snowden's actions do not evince a lack of due diligence. Believing the truthfulness of Litton's motion to lift the stay does not reflect the absence of due diligence, for "[a] litigant. . . should not be required to assume that falsified documents are being produced by an opposing party." *Id.*

The next question is what consequence attaches to the bankruptcy court's abuse of discretion in its determination that Snowden had failed to meet the requirements for relief under Rule 60(b). As noted earlier, the bankruptcy court's written ruling focused on the question of

5

whether Snowden could cure the default on his mortgage loan by filing for bankruptcy after a foreclosure sale of the property had been confirmed but before his right to redeem had expired. R. 10 at 4. The court concluded that the only right Snowden retained at the time of his bankruptcy filing was the right to redeem, not an interest in the real estate itself. *Id.* at 7-8. The court went on to determine that the time for Snowden to exercise his redemption right in bankruptcy was governed by 11 U.S.C. § 108(b), which gave him sixty days after filing his bankruptcy petition, until December 14, 2005, to redeem. *Id.* at 8-9. The court concluded, contrary to Snowden's argument, that 11 U.S.C. § 1322(c)(1) did not toll or extend that period. *Id.* at 9. Finally, the court concluded that the redemption right had expired on December 14, 2005 because Snowden did not exercise it prior to that time. *Id.* at 10.

Determination of whether the bankruptcy court was correct in its analysis of the law involves, initially, the interplay of Illinois mortgage foreclosure law, 11 U.S.C. § 108(b), and 11 U.S.C. § 1322(c)(1), as well as the Seventh Circuit's interpretation of the latter provision in *Colon v. Option One Mortgage Corp.,* 319 F.3d 912 (7th Cir. 2002).

Illinois law provides that when, as in this case, the mortgagee purchases property at a foreclosure sale for less than the amount secured by the mortgage plus certain expenses, then the mortgagor has "a special right to redeem, for a period ending 30 days after the date the sale is confirmed," by paying the mortgagee the sale price plus certain additional expenses and interest. 735 ILCS 5/15-1604(a). If the mortgagor satisfies these conditions, then the property is conveyed to the mortgagor. *Id.* 15-1604(b).

In Snowden's case, because the foreclosure sale was confirmed on October 5, 2005, under section 15-1604(a) his special right to redeem would have remained in effect only until

6

November 4, 2005. In the interim, however, Snowden filed for bankruptcy. This brought section 108(b) into play. Under that provision, "if applicable nonbankruptcy law ... fixes a period within which the debtor ... may ... cure a default, ... and such period has not expired before the date of the filing of the petition," the debtor (or trustee) "may only ... cure ... before the later of" the end of that period, including any suspension of the period occurring on commencement of the bankruptcy case, or 60 days after the order for relief. 11 U.S.C. § 108(b). It appears undisputed that the longer of the two periods was sixty days after the order for relief, that is, sixty days after the filing of the petition, or December 14, 2005.[1]

Section 1322(b) provides that subject to subsections 1322(a) & (c), a chapter 13 plan may, among other things, provide for the curing or waiving of any default. Under section 1322(c)(1), which was enacted in 1994, "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). Snowden argues that until his right to redeem had expired – which it had not, at the time of his bankruptcy filing – there was no "foreclosure sale" within the meaning of §1322(c)(1), and thus the default on the mortgage note was still subject to being cured over the course of his chapter 13 plan.

There is no controlling authority concerning the effect of § 1322(c)(1) in this situation. *Colon,* however, informs this Court's reading of the statute. In *Colon,* the plaintiff executed a note secured by a mortgage on her home. The defendant, which held the note, filed a foreclosure

---

[1] It is unclear to this Court, and the parties do not discuss, whether the automatic stay had any effect on the running of the thirty day period Illinois law provided for exercise of Snowden's special right to redeem.

7

action in state court. A judgment of foreclosure and sale was entered, and a foreclosure sale was held. A few days later, before the state court had confirmed the sale as required by Illinois foreclosure law, the plaintiff filed for bankruptcy. The bankruptcy court thereafter lifted the automatic stay to allow the defendant to proceed with the foreclosure.

On appeal, the Seventh Circuit considered whether it was appropriate for the bankruptcy court to lift the automatic stay. The court said that the case turned on the relationship between § 1322(c)(1) and Illinois mortgage foreclosure law. After reviewing the language and legislative history of § 1322(c)(1), the court determined that its immediate purpose was to overturn a Third Circuit decision holding that the right to cure a default on a home mortgage did not extend beyond entry of the foreclosure judgment (which, of course, precedes the foreclosure sale). More broadly, the court concluded that the purpose of § 1322(c)(1) was to extend the right to cure up to the date of the foreclosure sale, but to allow the states to have the final word on whether the right to cure would extend beyond that. *Id*. at 917-19.

The court ultimately did not decide whether the Illinois mortgage foreclosure statute allows a right to cure extending beyond the foreclosure sale; that was not an issue in *Colon,* as the plaintiff's ninety-day statutory right to redeem had already expired at the time of the foreclosure sale. That would be true "in most cases," the court noted. *Id.* at 920. But if state foreclosure law provided for a right to cure after the sale, the court indicated, that right would exist in bankruptcy. *Id.* (stating that § 1322(c)(1) "requires deference to state mortgage law on the scope of any right to cure after the sale"); *see also id.* at 921 ("any right to cure after the time of the sale would have to be found in the state foreclosure law").

Consistent with *Colon,* the Court concludes that § 1322(c)(1) ensures that the right to

8

cure extends up to the time of the foreclosure sale but does not by its own terms extend that right beyond the date of the foreclosure sale. In other words, § 1322(c)(1) allows a debtor to cure a debt on a home mortgage loan up to the time of the foreclosure sale, or up to the time allowed under state foreclosure law, whichever is longer. In this case, the foreclosure sale took place, and was confirmed, before Snowden filed for bankruptcy. The fact that Snowden may have retained a special right to redeem does not affect whether a "sale" within the meaning of § 1322(c)(1) had occurred – there was, in fact, a sale that a state court confirmed. Thus § 1322(c)(1) did not give Snowden any extended right to cure in bankruptcy. His remaining right to redeem or cure as of the time of his bankruptcy petition was defined by Illinois law, not § 1322(c)(1).

As the Court has previously indicated, under Illinois law Snowden's right to cure – his special right of redemption – would have expired on November 4, 2005 had he not filed for bankruptcy. Once he filed for bankruptcy, section 108(b) extended the time for exercise of his redemption right to December 14, 2005. But as the Court has ruled, § 1322(c)(1) did not tack on a further extension; more specifically, it did not permit Snowden to cure his default over the course of his chapter 13 plan. In short, the Court agrees with the bankruptcy court's understanding of the interplay of Illinois mortgage foreclosure law, 11 U.S.C. § 108(b), and 11 U.S.C. § 1322(c)(1).

The third and final question is whether the bankruptcy court abused its discretion in determining that Snowden was not entitled to any relief because his redemption right had already expired before he filed his Rule 60(b) motion. Though the court discussed this issue separately from its consideration of whether Snowden had met the requirements for relief under Rule 60(b)(2), the two issues appear to this Court to be intertwined.

9

In denying Snowden's Rule 60(b) motion, the bankruptcy court determined that by the time of Snowden's motion to vacate, it was too late for him to exercise his special redemption right. The Court respectfully points out that this determination amounted to somewhat of a catch-22. The reason the right expired without being used was that Litton had misrepresented to the bankruptcy court that a third party had purchased Snowden's home at the foreclosure sale. That representation told all concerned that Snowden had no remaining redemption rights. If, on the other hand, Litton had told the court the truth, namely that *it* had purchased the property for less than the balance due on Snowden's note, that would have made it clear to all concerned that Snowden still had a right to redeem. To conclude that Snowden was not entitled to relief after discovering Litton's misrepresentation because the right had expired in the interim would seem to allow Litton to gain an advantage from having misled the bankruptcy court.

It is nonetheless somewhat tempting to say that the bankruptcy court's abuse of discretion on the Rule 60(b) issue is harmless. It seems relatively clear that what Snowden was looking for was the ability to cure his default over the entire course of his chapter 13 plan, *see, e.g.,* Mar. 29, 2006 Tr. at 6, 15, not to redeem within the much shorter period that remained under section 108(b) at the time Litton obtained the order lifting the stay. But the Court is not prepared to reach that conclusion without first allowing the matter to be explored on remand; it is at least conceivable that had Snowden known he had time left to redeem, he would have been able to do what was necessary to exercise that right in timely fashion. Moreover, "determination of whether the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the [decision]." *Lonsdorf,* 47 F.3d at 898. The Court concludes that the appropriate course is to reverse the

bankruptcy court's denial of Rule 60(b) relief and remand for consideration of the appropriate course in light of the Court's determination that Snowden met the requirements for relief under Rule 60(b)(3).

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment reversing the decision of the bankruptcy court and remanding the case for further proceedings consistent with this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   December 1, 2006